IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHILLIP BLACKMON, on behalf of himself and others similarly situated, | § § § | CIVIL ACTION NO. __17-1362 |
| *Plaintiff*, | § § | JURY TRIAL DEMANDED |
| v. | § § | |
| MICHAEL STAPLETON ASSOCIATES, LTD. d/b/a MSA SECURITY, | § § § | COLLECTIVE ACTION |
| *Defendant.* | § § § | |

**COLLECTIVE ACTION COMPLAINT**
**AND JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff hereby submits his Collective Action Complaint and Jury Demand and, upon trial of this matter, would show the trier of fact as follows:

**I.    SUMMARY**

1.     Michael Stapleton Associates d/b/a MSA Security ("MSA"), a company in the business of providing security, intelligence, training, and investigative services, is violating the Fair Labor Standards Act ("FLSA") by forcing its explosive detection canine handlers to work a substantial amount of time without properly paying compensation for all hours worked and by forcing them to work a substantial amount of overtime without properly paying overtime compensation, thus depriving them of rightful compensation for their work that MSA is legally obligated to pay.

**II.    JURISDICTION AND VENUE**

2.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331

1

because Plaintiffs' claims arise under federal law, namely the FLSA, 29 U.S.C. § 201 *et seq*.

3. Venue is proper because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Northern District of Texas. 28 U.S.C. § 1391(b)(2).

### III. THE PARTIES

4. Plaintiff Blackmon worked for Defendant as an explosive detection canine handler. He regularly worked on average 20-35 hours per week training one of MSA's explosive detection canines without receiving any compensation for the time he was required to spend training MSA's explosive detection canine. When he spent more than 40 hours per week training MSA's explosive detection canine and performing other compensable work for MSA, he was not paid overtime compensation at a rate of one and one-half times his regular rate of pay for each hour he worked in excess of 40 hours in a week. Plaintiff Blackmon's consent is attached as Exhibit A.

5. The class of similarly situated employees consists of all current and former explosive detection canine handlers who were employed by MSA during the three-year period preceding the filing of the Original Complaint. These similarly situated individuals are referred to as the "Members of the Class" or "the Class."

6. Defendant Michael Stapleton Associates, Ltd. d/b/a MSA Security is a Delaware corporation with a principal place of business at 9 Murray Street, Second Floor, New York, New York 10007 that is engaged in commerce in the United States and is otherwise subject to the FLSA. Specifically, according to MSA's own public representations about its business, the work it does "providing security, intelligence, training and investigative services helps protect millions of Americans, every single

week."[1] MSA represents that "[w]ith an uncompromised commitment to comprehensive best-in-class training of our canines and handlers, MSA delivers an unrivaled and nationally-certified Explosive Detection Canine (EDC) team that keeps millions of people safe across the globe."[2] MSA also reports that "[y]ou'll find MSA bomb dog teams working everywhere sniffing out potential threats from both stationary and mobile explosive odors in professional sports stadiums, airports, amphitheaters, cargo loading docks and more."[3] MSA has offices in California, Massachusetts, New York, and Virginia, operating its business in at least those four states.[4] Therefore, MSA has or had (during the relevant time period) at least two or more employees engaged in commerce or in the production of goods for commerce for purposes of FLSA coverage.

7. Additionally, upon information and belief, MSA—a private company with at least 4 office locations identified on its website and more than 700 employees—has annual gross volume of sales made or business done of not less than $500,000.[5]

8. MSA may be served with process by serving its Registered Agent, The Corporation Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

9. MSA employed Plaintiff within the meaning of the FLSA.

### IV. BACKGROUND

10. MSA employed Plaintiff and explosive detection canine handlers similarly situated to Plaintiff to handle, train, board, and feed explosive detection canines.

---

[1] MSA Security website, *available at* http://msa security.net/who-is-msa (last visited on May 5, 2017).

[2] MSA Security Website, *available at* http://www.msasecurity.net/msa-explosive-detection-canines (last visited on May 5, 2017).

[3] *Id.*

[4] MSA Security website, *available at* http://msa security.net/msa-contact-us (last visited on May 5, 2017).

[5] MSA Security website, *available at* http://msa security.net/who-is-msa; MSA Security website, *available at* http://msa security.net/msa-contact-us.

3

11. Plaintiff and, upon information and belief, Members of the Class regularly worked on average 20-35 hours per week training MSA's explosive detection canines. However, MSA's explosive detection canine handlers were not paid for the time they worked training MSA's canines, even though such training was a required part of their jobs. Instead, MSA paid those non-exempt workers a flat $400 monthly stipend for expenses, which usually did not cover all of the expenses they paid per month in association with MSA's explosive detection canines.

12. MSA's explosive detection canine handlers perform various tasks, including training MSA's explosive detection canines to detect potential threats from stationary and mobile explosive odors and performing such detection efforts with MSA's canines in professional sports stadiums, airports, amphitheaters, cargo loading docks, and other places. MSA's explosive detection canine handlers also board, feed, and otherwise take care of the MSA canines assigned to them. MSA's explosive detection canine handlers travel in and between various states, including but not limited to California, Louisiana, Missouri, Minnesota, Ohio, and Texas, performing work therein.

13. MSA engages in commerce by selling its explosive detection canine services to clients throughout the United States. Therefore, MSA's explosive detection canine handlers work is in practical effect a part of commerce or of the functioning of an instrumentality or facility of interstate commerce.

14. MSA pays its explosive detection canine handlers similarly situated to Plaintiff by the hour utilizing a pay period that consists of two weeks.

## V. PLAINTIFF'S INDIVIDUAL ALLEGATIONS

*A.  Defendant Failed to Properly Pay Compensation.*

15. Plaintiff worked with MSA's other similarly situated explosive detection canine handlers. They worked for MSA with its explosive detection canines in California, Louisiana, Missouri, Minnesota, Ohio, and Texas, training the canines and handling them while detecting potential threats from stationary and mobile explosive odors at profession sporting events and other locations. During his tenure working for MSA, Plaintiff typically worked on average 20-35 hours per week training the MSA explosive detection canine assigned to him. He also fed, boarded, and otherwise took care of MSA's canine. In a typical week, Plaintiff commonly worked more than 40 hours in total.

16. MSA paid Plaintiff a set hourly rate for each hour worked handling MSA's explosive detection canine. However, MSA did not pay Plaintiff for the many hours he worked training MSA's explosive detection canine during each week.

17. MSA's pay periods consisted of two weeks. Thus, during each pay period, Plaintiff worked approximately 20-35 hours during each week for which he was not compensated at all. When Plaintiff worked more than 40 hours total in a week, MSA did not pay him overtime compensation at a rate of one and one-half times his regular rate of pay for each hour he worked in excess of 40 hours in a week

18. The FLSA requires MSA to pay compensation for each hour Plaintiff worked training MSA's explosive detection canine. MSA should have paid Plaintiff for the on average 20-35 hours a week he worked training MSA's canine, but MSA failed to do so.

19. The FLSA requires MSA to pay overtime compensation for each hour

Plaintiff worked in excess of 40 hours in a week. MSA should have paid Plaintiff overtime compensation at a rate of one and one-half times his regular rate of pay for each hour he worked in excess of 40 hours in a week, but MSA failed to do so.

20. By failing to pay Plaintiff for the hours he worked training MSA's explosive detection canines and by failing to pay Plaintiff his overtime rate of pay for hours he worked in excess of 40 hours in a week, MSA has deprived Plaintiff of a significant amount of normal compensation and overtime compensation to which he is rightfully entitled.

**B.** *Defendant Willfully Violated the FLSA.*

21. The FLSA and Department of Labor regulations set forth the proper means for calculating and paying compensation to non-exempt employees like Plaintiff. MSA failed to follow these rules when paying Plaintiff.

22. MSA had a policy and/or practice of paying its explosive detection canine handlers for only a portion of the time they worked instead of the actual amount of time that they worked in a given week.

23. MSA also had a policy and/or practice of not paying its explosive detection canine handlers overtime compensation at a rate of one and one-half times his regular rate of pay for each they worked in excess of 40 hours in a week.

24. MSA knew or have shown reckless disregard for the requirements of the FLSA with respect to compensation for Plaintiff.

## VI. COLLECTIVE ACTION ALLEGATIONS

25. Plaintiff is aware that MSA's illegal policies or practices have been imposed upon Members of the Class. Like Plaintiff, the Members of the Class work for MSA as explosive detection canine handlers. The Members of the Class perform job duties similar

to Plaintiff, namely handling, training, boarding, and feeding MSA's explosive detection canines.

26. Upon information and believe, MSA's explosive detection canine handlers worked with its explosive detection canines throughout the United States.

27. Upon information and belief, as with Plaintiff, Members of the Class typically work on average 20-35 hours a week training MSA's explosive detection canines without being paid compensation for that time worked training MSA's canines.

28. As with Plaintiff, Members of the Class are paid every two weeks. Upon information and belief, the Members of the Class are not paid by MSA for the time they spend each week training MSA's explosive detection canines, and are not paid overtime compensation by MSA at a rate of one and one-half times their regular rates of pay for all or some of the hours they worked in excess of 40 hours in a week. The FLSA requires that all hours worked in a week be compensated by an employer. The FLSA requires that hours over 40 worked in a week be compensated at the overtime rate of one and one-half times the regular rate of pay. Like Plaintiff, Members of the Class should be paid their regular rate for the on average 20-35 hours a week they spend training MSA's explosive detection canines and their overtime rate for all hours worked over 40 hours in a week.

29. MSA's failure to properly compensate Plaintiff and Members of the Class results, upon information and belief, from generally applicable policies and/or practices. Specifically, upon information and belief, it is a policy and/or practice for MSA not to pay its explosive detection canine handlers for the hours worked during a work week training MSA's explosive detection canines. Upon information and belief, it is also a policy and/or practice for MSA not to pay its explosive detection canine handlers overtime compensation

at a rate of one and one-half their regular rates of pay for all or some of the hours worked in excess of 40 hours in a week.

30. As such, the Members of the Class are owed unpaid compensation for precisely the same reasons as the Plaintiff.

31. Accordingly, the class of similarly situated plaintiffs is properly defined as:

**All current and former explosive detection canine handlers who were employed by MSA during the three-year period preceding the filing of the Original Complaint.**

32. Members of the Class should be notified of this lawsuit and given the opportunity to opt-in if they so desire.

33. Notice from this Court should be expedited to protect these workers from losing a portion of their damages due to the running of the statute of limitations.

### VII. CAUSES OF ACTION

34. The preceding paragraphs are incorporated by reference.

35. As set forth above, MSA violated the FLSA with respect to Plaintiff and Members of the Class by failing to pay compensation for all hours they worked in a week, and by failing to pay them overtime compensation for all or some of the hours they worked in excess of 40 hours in a week. 29 U.S.C. §§ 206, 207.

36. Plaintiff and Members of the Class are entitled to recover compensation for all hours worked in a week, and to recover overtime compensation for all hours worked in excess of 40 hours in a week.

37. In addition, Plaintiff and Members of the Class are entitled to liquidated

damages in an amount equal to their unpaid wages.

38. In addition, Plaintiff and Members of the Class are entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216 (b).

## VIII. JURY DEMAND

39. Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff requests that this Court award them and Members of the Class judgment against MSA for:

1. damages for the full amount of their unpaid regular compensation;

2. damages for the full amount of their unpaid overtime compensation;

3. an amount equal to their unpaid wages and overtime compensation as liquidated damages;

4. reasonable attorneys' fees, costs, and expenses of this action;

5. pre-judgment and post-judgment interest at the highest rate allowed by law; and

6. such other and further relief as may be allowed by law.

    Respectfully submitted,

    BAILEY PEAVY BAILEY PLLC

    By: /s/ Robert W. Cowan
        Robert W. Cowan
        Attorney-in-Charge
        TX Bar No. 24031976
        Justin C. Jenson
        TX Bar No. 24071095
        440 Louisiana Street, Suite 2100
        Houston, Texas 77002
        Telephone: (713) 425-7100
        Facsimile: (713) 425-7101

rcowan@bpblaw.com
jjenson@bpblaw.com